**UNITED STATES of America, Plaintiff–Appellee,**

v.

**O'Neal WOODS, Defendant–Appellant.**

No. 97–2209.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1998.

Decided July 7, 1998.

ment failed to establish that he knew a gun would be used in the crime. We affirm.

## I.

Derrick Armstrong and LaShawn Jiles were neighbors of O'Neal Woods in Milwaukee, Wisconsin. In early September, 1995, they approached Woods with the idea of robbing a bank. Woods suggested that they rob a bank in Delavan, Wisconsin. Delavan is a town about 45 miles southwest of Milwaukee. Woods used to live in Delavan, and was familiar both with the town and with a particular branch of the Firstar Bank located there.

On the night before the bank robbery, Woods convinced his girlfriend, Gloria Baxter, to participate in the bank robbery by driving one of the two getaway cars. On September 25, 1995, Armstrong and Jiles entered the Firstar Bank in Delavan wearing disguises. Jiles leapt over the counter separating the customers from the tellers, and began emptying one of the teller's cash drawers. Meanwhile, Armstrong stood near the bank's entrance, waved his pistol in the air, and told everyone to get down. After taking about $5,600 in cash, Jiles and Armstrong left the bank. They threw the money, gun and disguises into Baxter's car, and then got into Woods' car. Woods then headed back towards Milwaukee, followed by Baxter.

Shortly after leaving Delavan, the police stopped Woods' vehicle, but Baxter continued driving. The police took Woods, Armstrong and Jiles back to the bank to see if an identification could be made, and then to the police station for questioning. No one at the bank could make a positive ID, and because at this time the police had no evidence linking them to this crime, they eventually released the defendants. However, after additional investigation, the police obtained enough evidence against the four to indict them.

Eventually, Armstrong, Jiles, and Baxter pleaded guilty to armed bank robbery. Woods initially pleaded guilty, but then the district court allowed him to withdraw the guilty plea, and the case went to trial. At trial Baxter and Armstrong testified against

Lisa T. Warwick (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Charles H. Barr, Lisa C. Paul (argued), Croen & Barr, Milwaukee, WI, for Defendant–Appellant.

Before COFFEY, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

O'Neal Woods, his girlfriend, and two neighbors robbed a bank in Delavan, Wisconsin. Woods and his girlfriend drove the getaway cars; the two neighbors actually entered and robbed the bank. Everyone but Woods pleaded guilty. A jury convicted Woods of aiding and abetting an armed bank robbery, and aiding and abetting the use and carrying of a firearm during the bank robbery. He appeals, claiming that the govern-

Woods, implicating him in both the planning and the commission of the robbery. Jiles, however, testified that he did not think Woods knew of the bank robbery until Jiles and Armstrong left the bank; when they found him in the parking lot and jumped in his car, Woods was just at "the right place at the right time." The jury apparently believed Armstrong and Baxter, and convicted Woods of aiding and abetting an armed bank robbery, 18 U.S.C. §§ 2, 2113(d), and aiding and abetting the use of a firearm in the commission of a violent crime. 18 U.S.C. §§ 2, 924(c). The district court sentenced Woods to 110 months' imprisonment on the armed bank robbery count, with a consecutive sentence of 60 months for the count involving the use of a firearm, 18 U.S.C. § 924(c).

Woods appeals his conviction on narrow grounds. He concedes that sufficient evidence was entered to convict him of bank robbery, 18 U.S.C. § 2113(a), but he challenges whether the record contains sufficient evidence for a reasonable jury to find that he knew that a firearm would be used in the bank robbery, 18 U.S.C. § 2113(d), and also that he aided and abetted the use of a firearm in the commission of a violent felony. 18 U.S.C. § 924(c). He also challenges one of the jury instructions given by the district court.

## II.

■ First we address Woods' challenge to the sufficiency of the evidence supporting the conviction for "armed" bank robbery. 18 U.S.C. §§ 2(a), 2113(d). We review the sufficiency of the evidence in a light most favorable to the government, and will affirm if any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. *United States v. Freland,* 141 F.3d 1223 (7th Cir.1998). To prove armed bank robbery, the government must show, *inter alia,* that a bank was forcibly robbed, 18 U.S.C. § 2113(a), and that by the "use" of a dangerous weapon or device, the bank robber assaulted someone or put lives in jeopardy. 18 U.S.C. § 2113(d). To convict Woods of aiding and abetting the bank robbery, "the Government must prove the essential elements

of aiding and abetting: knowledge of the crime, intent to further the crime, and some act of help by the defendant." *United States v. Petty,* 132 F.3d 373, 377 (7th Cir.1997). Because it charged Woods with *armed* bank robbery, the government must prove not only that Woods knew a bank robbery would occur, but also that a weapon would likely be used in the crime. *See, e.g., United States v. Spinney,* 65 F.3d 231, 235 (1st Cir.1995) ("In a prosecution for armed bank robbery, this shared knowledge [between the person committing the crime and the person aiding and abetting the crime] extends both to awareness of the robbery and to comprehension that a weapon would likely be used."). Woods concedes that based on Armstrong's testimony the jury could have concluded that Woods knew a gun would be carried into the bank, but contends that he had no knowledge that it would "used," *e.g.* brandished or displayed, by Armstrong. *Cf. Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (in context of using firearm to commit violent crime, 18 U.S.C. § 924(c), "use" means active employment). In essence, the defendant contends that the term "use" in § 2113(d) has the same meaning as "use" in § 924(c).

Woods also argues that the government had to prove that he had "actual" knowledge that the gun would be brandished, and failed to do so. The government suggests that constructive knowledge is sufficient to convict, but that in any case, it proved Woods had actual knowledge. *Compare United States v. Spinney,* 65 F.3d 231, 237 (1st Cir.1995) (constructive knowledge that weapon would be used could be sufficient) *with United States v. Dinkane,* 17 F.3d 1192, 1197 (9th Cir.1994) (government must prove that defendant had actual knowledge prior to robbery that weapon would be used in robbery).

■ We need not take a position on either of these legal disputes because the government presented evidence that Woods had *actual knowledge* that Armstrong would *brandish* a gun. Thus, even conceding the defendant's view of the law, Woods has not met his "heavy burden" of showing insufficiency of the evidence. *United States v. Alexander,* 135 F.3d 470, 474 (7th Cir.1998).

Armstrong testified that on the morning of the robbery, Woods and Jiles asked him if he had his gun, and then both men watched Armstrong load the gun, and take it with him. Meanwhile, Baxter was waiting for them in Woods' car. Woods asks us to disregard Armstrong's testimony on this point, because Baxter thought the conversation took place outside, while Armstrong testified that they talked inside his home. Initially, we note that Baxter testified that she could not hear the substance of the conversation, and therefore, we see no significant conflict between Armstrong's version and Baxter's version. Moreover, the trial took place about eighteen months after the robbery, and given that amount of time, we would expect witnesses to have slightly different recollections of the events as they unfolded. At most this is a minor discrepancy, which does not render the jury's reliance on Armstrong's testimony erroneous as a matter of law. *See, e.g., United States v. Scott,* 145 F.3d 878, 883–84 (7th Cir.1998) ("*Scott* challenges the testimony of Alvarez and Bridges by claiming that their account of the facts lacks credence due to inconsistencies. . . . The defendant offers no explanation as to why these considerations were not the routine sort of credibility questions that lie within the province of the jury to sort out." (internal quotations, alterations, and citations omitted)).

Also, other evidence not subject to a factual dispute among the government's witnesses bolsters our conclusion that Woods had actual knowledge that Armstrong would brandish a weapon. Armstrong entered the bank carrying the pistol *in his hand,* and Woods had an unobstructed view of Armstrong entering the bank. Also, Baxter testified that on the night before the robbery, Woods told her that a gun and the money from the bank would be thrown into her getaway car. Woods' inquiry about Armstrong's gun, and his comment to Baxter the night before the robbery, reveals that Woods considered the gun to be an integral part of the bank robbery. And of course seeing the gun being held in the hand of the robber as he approached the bank makes it practically certain that Woods had actual knowledge that Armstrong would brandish his gun in the bank.

The government also introduced evidence from which the jury could conclude that Woods knew or should have known that a gun would be brandished in the bank. The government introduced substantial evidence that Woods actively participated in the planning of the robbery. He initially suggested that the Firstar Bank in Delavan be robbed, he recruited Baxter to drive a getaway car which would contain evidence from the bank robbery, and he obtained a "loaner" car from his mechanic and license plates not registered to him to serve as the second getaway vehicle. Further, on the morning of the robbery, he directed Baxter to "case" the bank before the robbery, and provided her fifty dollars with which to purchase a money order, her cover story for entering the bank. From this, a jury could reasonably conclude that Woods would be aware of all aspects of the planned crime, including the brandishing of a gun by Armstrong. A rational trier of fact had ample evidence from which to draw the inference that Woods knew Armstrong would use a gun in the bank robbery, even accepting the defendant's definition of use.

■ Of course, knowledge alone is not sufficient to convict Woods of aiding and abetting; the government must also show intent to further the crime, and assistance. Woods concedes that he provided assistance. He contends, however, that the government was required to show that Woods *intended* Armstrong to brandish the gun. We disagree. An aider presumptively intends the natural and probable consequences of his actions, *see, e.g., United States v. Walker,* 99 F.3d 439, 443 (D.C.Cir.1996), and in this case, the probable consequences of knowingly providing aid to an armed bank robbery is the commission of an armed bank robbery, not an unarmed bank robbery. Woods cannot knowingly aid an armed bank robbery, but merely intend to aid an unarmed bank robbery. *See, e.g., United States v. Oliver,* 60 F.3d 547, 551 (9th Cir.1995) (The defendant "knew that a codefendant had and intended to use the firearm during [the crime], and intended to aid in that endeavor."). The government need not prove that Woods desired that the robbers would brandish a gun; all it must show is that he intended to further

the robbery, knowing that a gun would be used.

■ Woods makes a similar challenge to his conviction under 18 U.S.C. § 924(c). Our discussion regarding Woods' knowledge of the use of a dangerous weapon under 18 U.S.C. § 2113(d) applies with equal force to the issue of whether Woods knew that a firearm would be used or carried in the commission of a violent crime. However, Woods has an additional argument here: He claims that the government must show that he facilitated or encouraged the use or carrying of a firearm in the commission of the crime, and failed to do so. The government agrees that to be convicted of aiding and abetting a § 924(c) violation, the defendant must aid and abet the use or carrying of the firearm. *See United States v. Medina*, 32 F.3d 40, 45 (2d Cir.1994); *United States v. Bancalari*, 110 F.3d 1425, 1429–30 (9th Cir. 1997); *United States v. Luciano–Mosquera*, 63 F.3d 1142, 1150 (1st Cir.1995). *But see United States v. Simpson*, 979 F.2d 1282, 1285–86 (8th Cir.1992). Merely aiding the underlying crime and knowing that a gun would be used or carried cannot support a conviction under 18 U.S.C. § 924(c). *Medina*, 32 F.3d at 45; *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir.1995).

■ This argument, however, does not get Woods very far. "[O]nce knowledge on the part of the aider and abettor is established, it does not take much to satisfy the facilitation element." *United States v. Bennett*, 75 F.3d 40, 45 (1st Cir.1996). Cases have held that transporting the principal and the firearm to the scene of the crime is facilitation of a § 924(c) violation. *See Bazemore v. United States*, 138 F.3d 947, 949–50 (11th Cir.1998), and cases discussed therein. Encouraging others to use a gun in the commission of the underlying crime is also sufficient to establish aiding and abetting. *See, e.g., United States v. Pipola*, 83 F.3d 556, 564 (2d Cir.1996) ("the proof permitted the jury to infer that [the defendant] specifically encouraged the use of firearms in the robberies"). The Second Circuit has also held that an unarmed person present during a robbery makes it easier for another to carry a firearm through division of labor and that this

amounts to facilitation. *Medina*, 32 F.3d at 47. Additionally, benefitting from the use of the gun permits an inference of facilitation. *United States v. Morrow*, 977 F.2d 222, 231 (6th Cir.1992) ("[The aider] was as much a potential beneficiary of the firearm being present as was [the principal]").

Woods provided an affirmative act of facilitation or assistance to Armstrong in his use or carrying a firearm. As noted above, once knowledge is established, merely transporting the robber and the firearm to the scene of the crime amounts to facilitation sufficient to support the jury verdict, and the testimony of Armstrong and Baxter established that Woods in fact drove Armstrong and his gun to the Delavan bank. Moreover, Woods (and Jiles) initially prompted Armstrong to get his gun. The jury could infer that Woods encouraged Armstrong to carry a weapon in the commission of the crime by reminding him to bring it. Woods also procured a second getaway car and driver, which facilitated Armstrong's disposal of the gun, which in turn made it more likely Armstrong would carry a gun in the robbery, because it decreased Armstrong's chances of being caught with the gun. Additionally, the use of the gun in the bank expedited Jiles' looting of the teller's cash drawer, reducing the amount of time the robbery took. Obviously, the less time the robbery took, the bigger the head start Woods would have driving the getaway car. Thus, Woods directly benefitted from the use of the gun. From this evidence, a reasonable jury could conclude that Woods provided at least one affirmative act of assistance, and therefore, along with the evidence of knowledge and intent, sufficient evidence supports the conviction under 18 U.S.C. § 924(c).

Woods also argues that the district court gave an erroneous jury instruction which relieved the government from having to prove every element of the crime Woods was charged with. The government initially proposed that the judge render the following jury instruction:

A defendant need not personally perform every act constituting the crime charged. Every person who willfully participates in

the commission of a crime may be found guilty.

1 Federal Criminal Jury Instructions of the Seventh Circuit, § 5.05 (1980). Woods objected on the ground that the instruction relieved the government from having to prove that Woods aided and abetted the armed bank robbery. Accommodating that objection, the district court altered the jury instruction as follows:

A defendant need not personally perform every act constituting the crime charged *for which that defendant is accused of aiding and abetting.* Every person who willfully participates in the commission of a crime may be found guilty.

(emphasis added). At the defendant's request, the district court reiterated what the modified instruction would be, and Woods did not further comment on this instruction. After the jury retired, Woods renewed his objection regarding this jury instruction to the district court. He contended that it removed the government's burden to prove the defendant guilty of each element of the crime he has been charged with, and was confusing or misstated the law.

▮▮▮▮ Our review of jury instructions is limited. *Doe v. Burnham,* 6 F.3d 476, 479 (7th Cir.1993). We seek "only to determine if the instructions as a whole were sufficient to inform the jury correctly of the applicable law." *Patel v. Gayes,* 984 F.2d 214, 218–19 (7th Cir.1993) (citation and internal quota-

tions omitted). "As long as the instructions treat the issues fairly and adequately, they will not be interfered with on appeal." *United States v. Ruiz,* 932 F.2d 1174, 1179 (7th Cir.1991) (quotation and citation omitted). "We will reverse only if it appears that the jury was misled and its understanding of the issue was seriously affected to the prejudice of the complaining party." *Wilson v. Williams,* 83 F.3d 870, 874 (7th Cir.1996) (internal quotations, punctuation and citations omitted).[1]

▮▮▮▮ Woods contends that this instruction allowed the jury to find that he was a joint venturer, *i.e.* a conspirator, instead of an aider and abettor, despite the fact that he was not charged with conspiracy. *See, e.g., United States v. Hall,* 109 F.3d 1227, 1230 (7th Cir.1997) ("The defendants were joint venturers in the business of crack cocaine[, and] were convicted by a jury of conspiracy to distribute . . ."). Had the district court given the government's proposed instruction, we would agree, but the modification made by the district court cured that flaw. The instruction as given properly reflects that a person may be convicted of aiding and abetting by committing only a single act of assistance, in contrast to a principal charged with actually committing the crime.[2] The Supreme Court has adopted Judge Learned Hand's formulation for aider and abettor liability. "In order to aid and abet another to

1. We note that Fed.R.Crim.P. 30 requires an objection be made "before the jury retires to consider its verdict," to preserve the issue for appellate review. Here, an objection was made, sustained, and the instruction modified accordingly. The defendant failed to object to the modified instruction until after the jury retired. When the district court modifies an instruction, the defendant must renew his objection, explaining why the modification is insufficient. *United States v. Green,* 779 F.2d 1313, 1320 n. 6 (7th Cir.1985) ("The record in this case shows that the defendant originally argued on behalf of his proposed instruction, but offered no further comment, much less an objection, (and apparently acquiesced) after the court suggested a modification of one of the Government's instructions."). The district court must be given the opportunity to address these concerns before the defendant raises them in this court. However, the government has not argued that Woods waived this objection, and thus, has waived the waiver argument. *See, e.g., Soo Line R.R. Co. v. St. Louis*

*Southwestern Ry. Co.,* 125 F.3d 481, 483 & n. 2 (7th Cir.1997). We will consider the merits of the instruction.

2. Woods states that the district court properly instructed the jury that the government had to prove "that Woods aided and abetted the principals in each essential element of the crime charged." The judge did not issue this instruction, and if he had, it would have been error. "Aiding and abetting is nothing if not a crime you may commit without performing all of the elements of the substantive offense." *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir. 1989). Even the Ninth Circuit appears to be pulling back from this view of aider and abettor liability. *See, e.g., United States v. Oliver,* 60 F.3d 547, 551 (9th Cir.1995) ("*Dinkane* only requires proof that Jones knew that a co-defendant had and intended to use the firearm during a carjacking, and intended to aid in that endeavor.").

commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (Hand, J.)). The government need not prove assistance related to every element of the underlying offense; rather, the defendant must be shown to have "contributed at least one act of affirmative assistance." *United States v. Griffin*, 84 F.3d 912, 928 (7th Cir.1996) (citing *United States v. Zafiro*, 945 F.2d 881, 887 (7th Cir.1991), *aff'd*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)). Thus, given the district court's modification of this instruction, the instruction did not blend joint venturer liability with aider and abetter liability.

■ Woods also spies error in the second sentence of this instruction; he claims that it lowered the government's burden of proof. First, we note that the second sentence contains no misstatement of law: Evidence of participation in the crime may be used to establish knowledge, desire and facilitation, and in fact, knowing participation is one of the elements of the crime the government must prove. *See, e.g., United States v. McNeese*, 901 F.2d 585, 608 (7th Cir.1990) ("the essential elements of aiding and abetting require proof of the defendant's (1) association with the unlawful venture, (2) *knowing participation* in it, and (3) active contribution toward its success." (emphasis added)). But, Woods argues, the instruction is incomplete; it does not describe everything the government must prove. This is true, but is still not error, for we must look to the entire set of jury instructions, and in this case, the instructions properly reflected what the jury was required to find to convict Woods. The mere supposition that the jury fixated on this sentence, thus ignoring the other instructions relating to the material elements of the crime, will not result in reversal of a jury verdict. *United States v. James*, 923 F.2d 1261, 1269 (7th Cir.1991) ("This contention, like the previous one, nit-picks and focuses on two specific words in the jury charge taken out of context rather

than reading and considering the jury charge as a whole."). Also, given the testimony of Baxter and Armstrong implicating Woods in the bank robbery, the evidence against Woods appears overwhelming.

### III.

In sum, the record supports the inference that Woods knew he was aiding an armed robbery, and also, he specifically aided the use of a firearm in the commission of the bank robbery. Also, we find no error in the court's jury instructions, and therefore, we AFFIRM Woods' convictions on all grounds.