In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3663

United States of America,

Plaintiff-Appellee,

v.

Tom Ray Wallace,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99 CR 19 JM--James T. Moody, Judge.

Argued February 25, 2000--Decided May 12, 2000

Before Bauer, Ripple, and Manion, Circuit Judges.

Bauer, Circuit Judge.  A jury convicted Tom Wallace for his role in an armed bank robbery, but acquitted him on a separate charge of using a firearm during a crime of violence. The district court sentenced Tom/1 to 180 months in prison and five years of supervised release. On appeal, Tom challenges the sufficiency of the evidence underlying his conviction. Tom also complains about a jury instruction and a sentencing enhancement. We affirm.

I.  Background

On January 29, 1999, shortly after smoking a marijuana cigarette laced with cocaine, Tom Wallace and his brother, James Wallace, decided to rob the American Savings Bank located at 4521 Hohman Avenue in Hammond, Indiana. The brothers planned that Tom would collect the money and James would "take care of" the bank security guard.

While on their way to the bank, Tom and James passed the South Shore Train Station located next door to the bank. An employee in the train station noticed the

Wallace brothers "acting strange" and observed that one of them had a nylon stocking on his head. The employee notified a train station security guard of what she had seen and the guard instructed her to call for police assistance. When Tom and James went into the bank, the security guard positioned himself outside of the bank.

When the Wallace brothers entered the bank, James turned to his left and confronted two individuals. A security camera recorded the Wallace brothers' entrance and a photo from that camera shows James brandishing a gun as he entered the bank. Pointing his gun at a bank employee and a customer, James approached them and yelled at them to get on the floor; he then ran to the rear of the bank and put his gun to the bank security guard's forehead. He screamed at the guard, "Give me your weapon. Get on the ground." James then took the security guard's gun. Now armed with two guns, James briefly left the guard. A moment later, James returned to the security guard, put a gun to the back of his head and took the guard's radio. With a gun in each hand, James returned to the front of the bank. When one of the customers raised his head, James yelled at the customer, "You want me to blow your God damned head off? Get your head back down."

While James kept watch over the people in the bank, Tom was busy collecting money. Immediately after entering the bank, Tom ran to his right and jumped on the teller counter. He ordered one of the tellers to put money in a plastic bag and then to get on the floor. Tom reached into a teller's drawer and started removing cash.

After Tom filled a bag with money, the Wallace brothers fled the bank with James leading the way. Upon leaving the bank, they were immediately confronted by the train station security guard waiting outside who yelled "police." A brief shoot out ensued in which the train security guard shot James three times; Tom dropped to the ground and immediately surrendered. By this time, the bank security guard had emerged from the bank and helped hold the men until Hammond police arrived. The police recovered the bag of cash that the Wallace brothers had stolen.

A grand jury returned an indictment charging both Tom and James with several crimes related to the bank robbery. Count 1 of the indictment charged the Wallace brothers with unarmed bank robbery in violation of 18 U.S.C. sec. 2113(a), armed bank robbery in violation of 18 U.S.C. sec. 2113(d), and aiding and abetting in an armed bank robbery in violation of 18 U.S.C. sec.sec. 2 and 2113(d). Count 2 of the indictment charged that Tom and James violated 18 U.S.C. sec. 924(c) by using a firearm during the commission of a violent crime. James pleaded guilty to the charges against him, but Tom went to trial.

At trial, Tom admitted his guilt for unarmed bank robbery in violation of 18 U.S.C. sec. 2113(a), but denied that he was accountable for an armed bank robbery. Tom testified that he knew his brother owned a gun, but denied knowing that James had carried the gun into the bank or used a gun during the robbery. Tom stated that he never saw James brandish a gun while they were robbing the bank. Finally, although Tom told the FBI in a post-arrest statement that he watched James throw down two guns outside of the bank, at trial he testified that he never saw James with a gun outside of the bank.

James testified at Tom's trial and admitted that he carried a gun into the bank during the robbery, but said that he could not remember whether he told Tom that he had the weapon. James blamed his failed memory on his drug use immediately before the robbery. James did, however, confirm that the brothers had planned for Tom to get the cash while James was supposed to "take care of" the security guard.

The jury returned a general verdict form which stated, "We, the jury, find the defendant, TOM RAY WALLACE . . . Guilty of the charge of armed bank robbery contained in Count 1 of the indictment filed in this case." The verdict form did not specify whether the jury found Tom directly liable for the armed bank robbery, or whether it found him derivatively culpable under an aiding and abetting theory, or both. As for the charge in Count 2 of the indictment, the jury decided that Tom was not guilty of using a

firearm during the commission of a crime of violence. After a sentencing hearing, the district court sentenced Tom to 180 months in prison and five years of supervised release. Tom now appeals the sufficiency of the evidence which supported his conviction, a jury instruction, and his sentence.

## II. Analysis

### A. Sufficiency of the Evidence

Tom first argues that there was insufficient evidence presented at trial to hold him liable as an aider and abettor of the armed bank robbery./2 Challenging the sufficiency of the evidence is an uphill battle and the defendant bears a heavy burden. United States v. Bradley, 196 F.3d 762, 766 (7th Cir. 1999). "We review the evidence in the light most favorable to the government, and we affirm the conviction if any rational fact finder could have found the essential elements of the crime were established beyond a reasonable doubt." United States v. Thornton, 197 F.3d 241, 253-54 (7th Cir. 1999).

"To prove armed bank robbery, the government must show . . . that a bank was forcibly robbed, 18 U.S.C. sec. 2113(a), and that by the use of a dangerous weapon or device, the bank robber assaulted someone or put lives in jeopardy. 18 U.S.C. sec. 2113(d)." United States v. Woods, 148 F.3d 843, 846 (7th Cir. 1998). To show that Tom is guilty of aiding and abetting in the armed bank robbery, "the government must prove not only that [he] knew a bank robbery would occur, but also that a weapon would likely be used in the crime." Id.

Tom contends that there was insufficient evidence to convict him of aiding and abetting in the armed bank robbery because there was no proof that he knew James was planning to carry a gun or that James used a gun during the robbery. The evidence presented at trial, however, fails to support this argument. Viewing the evidence in the light most favorable to the government, as we must, there is ample proof from which a jury could conclude that Tom knew his brother planned to carry a gun and that James used a gun during the bank robbery./3

At trial, Tom admitted knowing that James owned a gun. The brothers specifically planned for the gun-owning James to "take care of" the bank security guard during the robbery. A bank security photograph shows James wielding a gun when the Wallace brothers entered the bank and while Tom was standing directly next to James. Witnesses testified that when James took the bank security guard's gun, James shouted at the guard, "Give me your weapon. Get on the ground." Additionally, when a customer raised his head, James yelled at the customer, "You want me to blow your god damned head off? Get your head back down." The jury's conclusion that Tom knew he was aiding and abetting in an armed bank robbery was completely reasonable.

Tom also points to the fact that the jury found him not guilty of using a firearm during a crime of violence in violation of 18 U.S.C. sec. 924(c), but guilty of aiding and abetting in an armed bank robbery. According to Tom, this "genuinely inconsistent verdict" should require us to relax what he calls the "strict and almost unreachable standard for determining insufficiency of the evidence." (Appellant's Brief at 17-18.)

We reject this argument; even assuming, as Tom does, that the jury convicted him only under an aiding and abetting theory, there is no inconsistency in the verdict. To convict Tom of aiding and abetting an armed bank robbery, the government merely had to show that he knew that a weapon would likely be used by someone to effect the robbery. Woods, 148 F.3d at 846. Because Tom could be convicted of aiding and abetting without proof that he personally carried or used a gun, nothing about the jury's verdict can be inconsistent. The jury's verdict seems to say that Tom knew his brother used a gun during the robbery (thus, he is guilty of aiding and abetting), but that Tom himself never used or carried a gun (thus, he is not guilty of the sec. 924(c) charge). This conviction and acquittal result is both internally consistent and supported by the evidence./4

B.  Jury Instruction

Tom next complains that the district court erred when it gave the "ostrich"

instruction regarding conscious avoidance. Tom contends that there was no evidence in the record to justify giving the instruction. We review the district court's decision to give the ostrich instruction for an abuse of discretion. United States v. Trigg, 119 F.3d 493, 504 (7th Cir. 1997); United States v. Walker, 25 F.3d 540, 546 (7th Cir. 1994).

"The ostrich instruction is properly given in cases 'in which there is evidence that the defendant, knowingly or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings. A deliberate effort to avoid guilty knowledge is all the guilty knowledge the law requires.'" United States v. Fauls, 65 F.3d 592, 598 (7th Cir. 1995) (quoting United States v. Giovannetti, 919 F.2d 1223, 1229 (7th Cir.1990)). The instruction is appropriate "when a defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." Walker, 25 F.3d at 546.

The district court acted well within its discretion by giving the instruction in this case. Tom testified that he did not know that James was going to bring a gun to the robbery and denied knowing that James ever used a gun during the robbery. And, although he told an FBI agent differently in a post-arrest statement, Tom claimed at trial that he never saw James discard two guns as they fled the bank. By testifying that he had no knowledge of his brother's use of guns during the robbery, Tom made the ostrich instruction applicable.

C. Sentence

Finally, Tom asserts that the district court should not have applied the sentencing enhancement of U.S.S.G. sec. 2B3.1(b)(2)(B) which requires district courts to increase a defendant's offense level by six points "if a firearm was otherwise used" during a robbery. We review the district court's application of this Guideline de novo, United States v. Gordon, 64 F.3d 281, 283 (7th Cir. 1995), and review its findings of fact for clear error. United States v. Pigee,

197 F.3d 879, 892 (7th Cir. 1999); United States v. Romero, 189 F.3d 576, 589 (7th Cir. 1999).

Although his sentencing arguments are difficult to understand, Tom seems to contend that the district court should not have applied the sec. 2B3.1(b)(2)(B) enhancement because he was acquitted of using a firearm during a crime of violence, 18 U.S.C. sec. 924(c). To the extent that this is a legal argument, it fails; the Guidelines explicitly require the enhancement for convictions under 18 U.S.C. sec. 2113. Here, because the jury found Tom guilty of aiding and abetting an armed bank robbery in violation of 18 U.S.C. sec. 2113(d), the enhancement must apply. His acquittal on the separate sec. 924(c) count bears no relationship to the mandatory application of U.S.S.G. sec. 2B3.1(b)(2)(B). See United States v. Cover, 199 F.3d 1270, 1277 (11th Cir. 2000).

To the extent that Tom means to make a factual argument that the enhancement should not apply because there was not enough evidence to support the finding that "a firearm was otherwise used," he is also incorrect. As we have explained, there was more than sufficient evidence at trial to show that Tom knew his brother either planned to carry a gun or that he actually used a gun during the robbery. Under the Guidelines, the weapon was attributable to Tom because he aided and abetted in its use. See U.S.S.G. sec. 1B1.3(a)(1)(A); United States v. Bolden, 132 F.3d 1353, 1356 (10th Cir. 1997) (sentencing enhancement for using a gun during an armed robbery appropriate even though defendant never personally used the gun because defendant aided accomplice in committing the crime); United States v. Burton, 126 F.3d 666, 678-79 (5th Cir. 1997) (same). The district court's factual findings more than adequately support the enhancement.


III.  Conclusion

Affirmed.



/1 Tom Wallace's brother, James Wallace, was Tom's codefendant and played a significant role in the facts of this case. Therefore, to avoid confu-

sion, we refer to each Wallace brother by his first name.

/2 As previously noted, Count 1 of the indictment charged Tom with three separate crimes--(1) unarmed bank robbery, (2) armed bank robbery, and (3) aiding and abetting an armed bank robbery. The general verdict finding Tom guilty of "armed bank robbery contained in Count 1 of the indictment" did not indicate whether the jury convicted him only under a direct theory of liability, or whether it found him responsible only under an aiding and abetting theory, or both. Tom's arguments on appeal assume that the jury only convicted him of aiding and abetting the armed bank robbery. Although the government credibly contends that there was enough evidence to support a finding of direct liability for the armed bank robbery, the government seems to accept Tom'sassumption for purposes of argument. While we express no opinion on the subject, we will analyze the issues in this appeal as though Tom were convicted only as an aider and abettor.

/3 Tom also asks us to decide whether the government had to prove that he had "actual" versus "constructive" knowledge that his brother used a gun during the robbery. Because we find plenty of evidence to show that Tom had actual knowledge of the gun, we need not resolve this issue. See Woods, 148 F.3d at 346.

/4 Even if the verdict were, as Tom puts it, "genuinely inconsistent," this would not be grounds for a reversal or new trial. See United States v. Mitchell, 146 F.3d 1338, 1343-45 (11th Cir. 1998) (verdict containing a conviction for armed robbery under 18 U.S.C. sec. 2113(d) and an acquittal on charge under 18 U.S.C. sec. 924(c) does not warrant reversal); United States v. McCall, 85 F.3d 1193, 1197-98 (6th Cir. 1996) (same); see also United States v. Akram, 152 F.3d 698, 701 (7th Cir. 1998) ("we do not recognize any doctrine whereby a conviction under one count must be set aside because it appears inconsistent with a jury's acquittal on a different count"); United States v. Castillo, 148 F.3d 770, 775 (7th Cir. 1998) ("we have refused to afford defendants who face inconsistent verdicts the benefit of a nullification of the guilty verdicts . . . we refuse to question the wisdom of the jury's verdict in this manner").