**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 18, 2006
Decided April 20, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 05-2917 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Southern District of Indiana, New Albany Division. |
| v. | No. 04 CR 14 |
| SEBASTIAN PEDROZA, *Defendant-Appellant.* | Sarah Evans Barker, *Judge* |

**ORDER**

While traveling with his cousin on what he contends was a trip to repossess cars, Sebastian Pedroza was arrested after police watched him and his cousin try to sell a confidential informant two kilograms of cocaine.  After a two-day trial, a jury found Pedroza guilty of possession with intent to distribute.  *See* 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii).  Pedroza appeals his conviction, arguing that the district court erred in giving the jury an "ostrich" instruction.  We affirm.

Pedroza worked for his cousin Christopher Osinger, who repossessed cars. According to Pedroza's account at trial, Osinger paid him to clean up the repossessed cars, inventory the personal property inside the cars, and drive the

repos. Pedroza testified that on January 16, 2002, Osinger asked him to travel with him to Kentucky to look for cars. The next day the two men drove a pickup truck from Chicago to Jeffersonville, Indiana, where they stopped and got a hotel room. Pedroza testified he thought they stopped so they could get some sleep before repossessing cars that night. While at the hotel, Pedroza heard Osinger talking on the telephone, though he insisted that he did not hear the content of that conversation because he was not listening. Then, "out of nowhere," Osinger told Pedroza, "Come on, let's go." Pedroza testified that he did not know where they were going and did not ask, and even though Osinger talked on the phone en route, he intentionally ignored Osinger's conversation because, he said, it was "none of [his] business." He stated, however, that "[w]hen we left the hotel I had a feeling that something—I was left out of something." Pedroza nonetheless rode with Osinger to a nearby McDonald's where he saw Dennis Skirvin, a family friend, standing in the parking lot. Osinger parked, and while Osinger remained in the pickup, Pedroza got out because, he said, "it was already agreed that I would just go get something to eat for us." Pedroza then saw Skirvin approach the car and speak with Osinger through the driver's side window. Pedroza also approached the driver's side window because, he said, he had left his money inside the pickup and wanted to get money from Osinger. Skirvin, however, ordered him to get back in the vehicle. Only then, Pedroza insisted, did he see for the first time two packages near the pickup's center console that he recognized as drugs. He maintained that he was "just with" Osinger and denied participating in the transaction or knowing that drugs were in the pickup. He also denied knowing that Osinger was a drug dealer.

Skirvin, testifying on the government's behalf, told a different story. While acting as a government informant, he assisted police in arranging a purchase of two kilograms of cocaine from Osinger. When Osinger and Pedroza arrived at the McDonald's parking lot, Skirvin said, he approached the driver's side window and told Osinger, who was in the driver's seat, "[L]et me see the merchandise." Skirvin testified Osinger turned to Pedroza, who was seated next to him, and said "Give me that bag." Pedroza then, according to Skirvin, picked up a black plastic bag from the floor of the pickup near his legs and handed it to Osinger, who put the bag on his lap and opened it so that Skirvin could inspect its contents. At about that time, Skirvin said, Pedroza got out of the pickup and approached him from around the front of the vehicle. Skirvin testified that he believed Pedroza was coming to collect the money, so he told Pedroza: "No, get back into the truck. Let's get this deal done." Pedroza returned to the passenger seat while Skirvin continued to inspect the cocaine. Skirvin testified that he then said, "Wait right here, I'm going to get your money," and walked away while Osinger and Pedroza stayed in the vehicle. Skirvin alerted the police that Osinger and Pedroza had the drugs, and the police made the arrest.

The district court instructed the jury that to convict Pedroza under § 841, it must find beyond a reasonable doubt that he "knowingly or intentionally possessed a mixture or substance containing a detectable amount of cocaine . . . with intent to distribute it." Over Pedroza's objection the court defined "knowingly":

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

The jury found Pedroza guilty.

On appeal Pedroza challenges the district court's decision to instruct the jury on deliberate ignorance. He does not challenge the form of the instruction but instead argues that any instruction was improper because, he contends, the evidence at trial supported only a "clear cut 'binary choice'": he either knew or did not know about the drugs in the truck. He contends the evidence was insufficient to support an inference that he purposefully avoided learning about the drug deal and that, at most, his failure to listen to Osinger's telephone conversations or look around the pickup's cab demonstrated a "lack of curiosity." He argues the instruction effectively allowed the jury to convict him for being negligent in not finding out about the transaction.

We review a district court's decision to give an ostrich instruction for abuse of discretion, viewing the evidence in a light most favorable to the government. *United States v. Carrillo*, 435 F.3d 767, 780 (7th Cir. 2006). An ostrich instruction is appropriate when: (1) the defendant denies guilty knowledge, and (2) there is enough evidence for a jury to infer that he deliberately avoided learning the truth. *United States v. Fallon*, 348 F.3d 248, 253 (7th Cir. 2003). Evidence that the defendant took overt physical steps to avoid actual knowledge supports an inference of deliberate ignorance, *Carrillo,* 435 F.3d at 780, as does a defendant's "cutting off of [his] normal curiosity by an effort of will," *United States v. Giovannetti*, 919 F.2d 1223, 1229 (7th Cir. 1990); *United States v. Craig*, 178 F.3d 891, 896 (7th Cir. 1999).

In this case, the district court permissibly instructed the jury on deliberate ignorance. Contrary to Pedroza's contention that, at most, he negligently failed to

discover the exact nature of Osinger's activities, Pedroza testified that he felt as if he were being "left out of something" when at the hotel Osinger unexpectedly said, "Come on, let's go." But he nevertheless departed with Osigner, did not ask where they were going, and then intentionally ignored Osinger's telephone conversations en route. This testimony alone supports an inference that Pedroza purposefully stuck his head in the sand to avoid acquiring full knowledge of his involvement in Osinger's activities. *See United States v. Rodriguez*, 929 F.2d 1224, 1227-28 (7th Cir. 1991) (concluding that ostrich instruction was proper where defendant did not ask participants in drug distribution scheme why they needed him to make a trip); *see also United States v. Wallace*, 212 F.3d 1000, 1004 (7th Cir. 2000) (instructing that ostrich instruction is proper where defendant suspects that he is involved in "shady dealings" and takes steps to avoid acquiring "full or exact knowledge of the nature and extent of those dealings"). Pedroza also took steps to physically distance himself from the drug deal when he attempted to leave the vehicle during the transaction. Although neither mere presence at the scene of a crime nor leaving the scene if someone suspects something is amiss is enough to establish guilt, a court may instruct a jury as to willful blindness where the facts support an inference that the defendant participated in a drug deal but left the scene of the sale to insulate himself from guilty knowledge of the transaction. *See United State v. Diaz*, 864 F.2d 544, 551 (7th Cir. 1988). And the government presented substantial evidence that Pedroza had actual knowledge of the transaction. A reasonable jury therefore could have concluded either that Pedroza had actual knowledge that he was participating in a drug deal or that he had deliberately avoided confirming the truth about his involvement.

This court has frequently upheld the use of an ostrich instruction where a defendant transported packages containing drugs under suspicious circumstances and then denied knowledge of the packages' contents. *See United States v. Wilson*, 134 F.3d 855, 868-69 (7th Cir. 1998) (collecting cases). This case is no exception. Moreover, when the government presents substantial evidence that a defendant had actual knowledge of the illegal activities, any error in giving an ostrich instruction is harmless. *See United States v. Carrillo*, 269 F.3d 761, 770 n.3 (7th Cir. 2001); *United States v. Graffia*, 120 F.3d 706, 713 n.5 (7th Cir. 1997). We therefore uphold the district court's use of an ostrich instruction and AFFIRM Pedroza's conviction and sentence.