In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-3313

DARWIN MONTANA,

*Petitioner-Appellant,*

*v.*

JAMES N. CROSS, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-cv-01019-DRH — **David R. Herndon**, *Judge.*

———————————

ARGUED SEPTEMBER 30, 2015 — DECIDED JULY 19, 2016

———————————

Before BAUER, RIPPLE, and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In 1998, Darwin Montana was convicted of aiding and abetting a bank robbery in which an accomplice used a firearm, in violation of 18 U.S.C. §§ 2113 and 924(c). The United States District Court for the Northern District of Illinois sentenced him to 322 months' imprisonment: 262 months on the bank robbery charge and 60 additional months on the weapons charge. On direct review, we affirmed his conviction and sentence. *United States v. Montana,*

199 F.3d 947 (7th Cir. 1999). He thereafter filed several unsuccessful postconviction petitions, including a motion to vacate under 28 U.S.C. § 2255.

In September 2014, Mr. Montana filed a new petition under 28 U.S.C. § 2241 in the United States District Court for the Southern District of Illinois, in whose jurisdiction he currently is incarcerated. Challenging only his § 924(c) conviction for use of a firearm in a crime of violence, he contended that the Supreme Court's decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), had narrowed the scope of criminal liability for aiding and abetting § 924(c) offenses and that the trial court therefore had erroneously instructed the jury on the elements of the offense in his earlier trial. The district court dismissed the petition on the merits at the screening stage under Rule 4 of the Rules Governing Section 2254 Cases. Mr. Montana timely appealed.

The road to possible postconviction relief for Mr. Montana is a complicated one, given his prior § 2255 motion and the consequent statutory bar on successive petitions. *Rosemond* significantly changed the landscape for his offense of conviction and therefore applies retroactively. Nevertheless, Mr. Montana cannot avail himself of the savings clause in 28 U.S.C. § 2255(e) because he could have brought the argument he now wishes to make in this § 2241 petition at an earlier time. Our earlier interpretation of the statute did not preclude Mr. Montana from raising the issue. Accordingly, we must affirm the judgment of the district court.

# I

## A.

In January 1998, Mr. Montana gave James Dodd a ride to various locations in the near-west suburbs of Chicago. According to Mr. Montana, on the day of the bank robbery, he had car trouble and pulled into a Jewel-Osco parking lot in Stickney, Illinois, to check the engine. Dodd then exited the vehicle and walked to a nearby bank, where he pointed a gun at the teller and demanded money. After the teller handed him more than $2,300, Dodd walked back to Mr. Montana's car. He got into the car and placed his weapon and the cash on the center console and instructed Mr. Montana to drive him away from the scene. Mr. Montana contends that it was at this moment that he learned of both the robbery and the weapon. He proceeded to follow Dodd's instruction and speed away. Meanwhile, the teller had triggered a silent alarm alerting law enforcement. She could view Mr. Montana's car through a window and therefore was able to give the police a description of the vehicle. The police undertook a high-speed chase for several minutes and quickly caught up. Mr. Montana lost control of the vehicle, and the officers apprehended both men.

## B.

### 1.

Mr. Montana and Dodd were charged with (1) conspiracy, in violation of 18 U.S.C. § 371, (2) bank robbery, in violation of 18 U.S.C. § 2113, and (3) use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).

Prior to trial, Dodd pleaded guilty and made a proffer to law enforcement in which he stated that he had told Mr. Montana of his intent to rob a bank and that the two had scouted locations in the days leading up to the robbery. At Mr. Montana's trial, however, Dodd's testimony did not reflect his proffer. Instead, he testified that Mr. Montana had no prior knowledge of his intent to rob the bank. His prior statement to law enforcement was used to impeach his testimony. The jury also heard from a federal marshal who overheard Dodd, while in custody, demanding a bribe of $10,000 from Mr. Montana's family, and also heard a stipulation from defense counsel that Dodd had passed a note to Mr. Montana's mother with the same demand in exchange for favorable testimony. Mr. Montana did not testify in his own defense.

At the close of the evidence, the court instructed the jury. On the bank robbery charge, the court told the jury that it should find Mr. Montana guilty if it concluded that Dodd had robbed the bank and that there was a conspiracy between the two, or that, in the absence of conspiracy, Mr. Montana had aided, abetted, counseled, commanded, induced, or procured the commission of the robbery. On the firearms charge, the court instructed the jury as follows:

> [T]he defendant is charged [with] knowingly using and … car[ry]ing a firearm during and [in] relation to a crime of violence. To sustain that charge the government has to prove each of [the following] propositions beyond a reasonable doubt.
>
> The first one is that the defendant is guilty of the charge of bank robbery in Cou[n]t 2 in either or both of the ways that I have just covered.

> And the second one is that James Dodd know-
> ingly used or carried a handgun during and in
> relation to the bank robbery.[1]

On two separate occasions during the deliberations, the jury sent the judge a note indicating that it believed it was dead-locked, but after a supplemental instruction to continue delib-erations, *see United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973) (en banc), it returned a verdict of guilty as to both the bank robbery and the firearms offense and not guilty as to the conspiracy count. The district court sentenced Mr. Montana to 262 months' imprisonment on the bank robbery and 60 con-secutive months on the § 924(c) offense.

Mr. Montana thereafter appealed his conviction. He con-tended principally that his trial counsel was ineffective be-cause counsel unwittingly had passed the note demanding a bribe from Dodd to Mr. Montana's mother and, further, be-cause he had called Dodd as a witness. Mr. Montana also chal-lenged the admission of the marshal's statement concerning Dodd's request for a bribe. We affirmed, rejecting each of his arguments and specifically concluding that, although Dodd proved to be an "uncontrollable" witness, it was not ineffec-tive assistance to have called him. *Montana*, 199 F.3d at 949–50.

## 2.

In 2001, Mr. Montana filed a timely § 2255 petition chal-lenging his conviction, again on the basis of ineffective assis-

---

[1] R.17-3 at 256.

tance of counsel and other claims not relevant here. The district court denied the petition. Mr. Montana subsequently filed a series of variously titled postconviction motions seeking a reduction of his sentence, and, when they were denied, motions for reconsideration of the denials. Indeed, the district court noted that Mr. Montana was "nothing if not persistent."[2] In dismissing his appeal of the last round of denials, we stated, "[t]he district court should have treated Montana's motions as successive applications because the relief sought (the reduction of sentence) is provided for by § 2255. He has not obtained authorization so the district court lacked jurisdiction to consider his claims." *United States v. Montana*, No. 05-1402 (7th Cir. June 20, 2005).

## C.

On September 19, 2014, Mr. Montana filed the present § 2241 petition in the district court; he only attacked his firearms conviction. He contended that he was entitled to relief under the Supreme Court's then-recent decision *Rosemond v. United States*, 134 S. Ct. 1240 (2014), which clarified the interplay between aiding-and-abetting liability under 18 U.S.C. § 2 and the substantive firearms offense in 18 U.S.C. § 924(c). Specifically, Mr. Montana alleged that the jury instructions at trial allowed a conviction without requiring a finding that he had actual, advance knowledge that Dodd would use a firearm. *Rosemond*, he contends, makes clear that such knowledge is necessary for conviction under the statute.

---

[2] R.17-4 at 14.

The district court dismissed the petition during the screening phase under Rule 4 of the Rules Governing Section 2254 Cases. The court first acknowledged that postconviction relief to federal prisoners generally must proceed under § 2255 and that alternative relief under § 2241 is available only in limited circumstances: specifically, only upon showing that (1) the claim relies on a new statutory interpretation case; (2) the petitioner could not have invoked the decision in his first § 2255 motion *and* the decision applies retroactively; and (3) there has been a fundamental defect in the proceedings that is fairly characterized as a miscarriage of justice.[3] The district court then determined that Mr. Montana could not satisfy the second condition because, although *Rosemond* was a statutory interpretation case and could not have been raised in earlier proceedings, no case had held that its rule applied retroactively. Furthermore, the court added, even if *Rosemond* applied retroactively, Mr. Montana might still have been convicted under its more rigorous intent standard. In the district court's view, even without foreknowledge of the robbery or the gun, Mr. Montana had chosen to drive the getaway car once Dodd returned to the car with the stolen money and the gun. Because he could have refused participation at that moment, the court concluded that a jury could have found that his conduct demonstrated the required intent.

Mr. Montana timely appealed, and we recruited counsel to assist him.[4]

---

[3] *See* R.5 at 6 (citing *Brown v. Caraway*, 719 F.3d 583–86 (7th Cir. 2013)).

[4] The court expresses its appreciation to counsel and his law firm for their excellent representation of their client.

**II**

We review de novo a district court's denial of relief under § 2241. *Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012).

**A.**

We begin by placing Mr. Montana's arguments in context by examining the Supreme Court's decision in *Rosemond* and its effect on the elements of the offense of conviction.

Prior to *Rosemond*'s advent in 2014, the Courts of Appeals had not spoken with a uniform voice about the interaction between the two statutes at issue in this case: 18 U.S.C. § 924(c), which makes it unlawful to use or carry a firearm in relation to a crime of violence, and 18 U.S.C. § 2, which provides for aiding and abetting liability. Many of the circuits had held that a defendant aids and abets a firearms offense only where the Government establishes that he took some action to facilitate or encourage his confederate not merely in the underlying offense, but also specifically in the using or carrying of a firearm.[5] Among these circuits, however, a number had indi-

---

[5] *See, e.g., United States v. Rolon-Ramos*, 502 F.3d 750, 758 (8th Cir. 2007) (requiring "'affirmative participation' and 'purposeful attitude'" by the defendant in furtherance of the firearm offense); *United States v. Medina-Román*, 376 F.3d 1, 6 (1st Cir. 2004) (stating "that the government would have to prove to a practical certainty her knowledge of [a confederate]'s carrying of a firearm and that she willingly facilitated that carrying"); *Bazemore v. United States*, 138 F.3d 947, 950 (11th Cir. 1998) (explaining that, to support a § 924(c) conviction, "the defendant must facilitate the carrying of the firearm rather than assist in the underlying crime"); *United States v. Bancalari*, 110 F.3d 1425, 1430 (9th Cir. 1997) (holding that a defendant

cated that, once knowledge of a confederate's firearm was established, the requirement of facilitation was minimal and often easy to establish.[6] The Tenth Circuit had taken a different tack, ruling that active participation in the underlying offense, coupled with *knowledge alone* of the confederate's using or carrying a firearm, was sufficient to establish liability for aiding and abetting a § 924(c) offense. *See United States v. Wiseman*, 172 F.3d 1196, 1217 (10th Cir. 1999).

The petitioner in *Rosemond* had been involved in the sale side of a marijuana transaction. Shots were fired during the transaction, and there was a factual dispute about whether he or his confederate had been the shooter. He was charged with substantive drug offenses as well as under § 924(c). With respect to the firearms charge, Rosemond was prosecuted on alternative theories: either he had used a firearm in connection with a drug trafficking offense, or he was liable under 18 U.S.C. § 2 for aiding and abetting the offense. Although he requested a jury instruction that required the Government to prove that he had intentionally taken an action to facilitate or encourage the firearm use, the district court instead applied the Tenth Circuit's rule and instructed the jury to find him guilty if he knew of the weapon and knowingly participated in the underlying offense.

---

must have "directly facilitated or encouraged the use of the firearm" (internal quotation marks omitted)); *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994) ("[T]he language of the statute requires proof that he performed some act that directly facilitated or encouraged the use or carrying of a firearm.").

[6] *See, e.g., United States v. Woods*, 148 F.3d 843, 848 (7th Cir. 1998); *United States v. Bennett*, 75 F.3d 40, 45 (1st Cir. 1996).

The Supreme Court granted certiorari and reversed. 134 S. Ct. at 1246. The Court began by stating that, "[a]s at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission," and that the issue before it was "how those two requirements—affirmative act and intent—apply in a prosecution for aiding and abetting a § 924(c) offense." *Id.* at 1245. It then acknowledged, with respect to the *participation* element, that "[a] defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense," and noted that "[i]n proscribing aiding and abetting, Congress used language that comprehends all assistance rendered by words, acts, encouragement, support, or presence—even if that aid relates to only one (or some) of a crime's phases or elements." *Id.* at 1246–47 (first alteration in original) (citation omitted) (internal quotation marks omitted). By contrast, a proper application of the *intent* element, the Court held, requires that the Government must prove "a state of mind extending *to the entire crime*." *Id.* at 1248 (emphasis added). The "intent requirement [is] satisfied when a person actively participates in a criminal venture with *full knowledge* of the circumstances constituting the charged offense." *Id.* at 1248–49 (emphasis added).

Applying its construction of § 2 to § 924(c), the Court therefore held,

> An active participant in a [crime of violence] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture,

and share in its benefits, with full awareness of its scope—that the plan calls not just for a [crime of violence], but for an armed one. In so doing, he has chosen … to align himself with the illegal scheme in its entirety—including its use of a firearm. And he has determined … to do what he can to "make [that scheme] succeed." He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun to the [crime of violence] himself, but because he took part in that [crime of violence] knowing a confederate would do so, he intended the commission of a § 924(c) offense—*i.e.*, an armed [offense].

For all that to be true, … the § 924(c) defendant's knowledge of a firearm *must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice*. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. As

> even the Government concedes, an unarmed ac-
> complice cannot aid and abet a § 924(c) violation
> unless he has "foreknowledge that his confeder-
> ate will commit the offense with a firearm." For
> the reasons just given, we think that means
> knowledge at a time the accomplice can do
> something with it—most notably, opt to walk
> away.

*Rosemond*, 134 S. Ct. at 1249–50 (first emphasis added) (cita-
tions omitted).

The Court therefore overturned Rosemond's conviction
because the § 924(c) instruction to the jury was a misstatement
of the law that relieved the Government of its burden on the
intent element of aider or abettor liability.

Focusing on this now narrowed scope of liability,
Mr. Montana now contends that his jury was erroneously in-
structed and that the Government did not establish that he
had foreknowledge of Dodd's use of a weapon. We agree that
the instruction at Mr. Montana's trial did not conform to the
rule announced in *Rosemond.* We therefore must determine
whether the current petition presents an avenue for relief.

### B.

### 1.

Section 2255 originally was designed to substitute for the
traditional habeas corpus remedy without in any way dimin-
ishing the protections afforded federal prisoners. It was en-
acted simply to ensure that collateral attacks on federal crim-

inal convictions would be heard in the district where the original sentence had been imposed, not in the district where the federal prisoner was incarcerated.[7] However, amendments to § 2255 in the Antiterrorism and Effective Death Penalty Act ("AEDPA") later imposed significant limitations on the availability of § 2255 to federal prisoners. Specifically, after AEDPA, a district court cannot consider any "second or successive motions" under § 2255 unless a court of appeals has certified that it contains "either (1) newly discovered evidence that makes a clear and convincing showing of innocence or (2) a new rule of constitutional law made retroactive by the Supreme Court." *Suggs v. United States*, 705 F.3d 279, 282 (7th Cir. 2013); *see also* 28 U.S.C. § 2255(h).[8]

As we noted earlier, Mr. Montana had filed a previous § 2255 motion as well as several motions under various titles, which we determined to be second or successive. Therefore, with respect to his present petition, Mr. Montana is subject to the hurdles of § 2255(h), and he concedes that he can meet neither of them. His claim is not predicated on the denial of a *constitutional* right or on new evidence. It is based on a question of *statutory* interpretation. Consequently, the ordinary procedural route for seeking collateral relief—a motion under § 2255—is foreclosed. We therefore must consider whether,

---

[7] *See United States v. Hayman*, 342 U.S. 205, 213–17, 219 (1952); *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc); *In re Davenport*, 147 F.3d 605, 608–09 (7th Cir. 1998).

[8] The prior version of the statute stated only that "the sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner," preserving the court's discretion. 28 U.S.C. § 2255 (1994).

because of this statutory barrier, he may afford himself of the *original* route—a habeas petition under § 2241.

The "savings clause" of § 2255 preserves the original remedy in those "occasional cases" in which a motion under § 2255 "is inadequate or ineffective to test the legality of" a federal prisoner's detention. 28 U.S.C. § 2255(e); *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc). Our decision in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), examined the scope of this provision. In our opinion, we began by noting "the essential function of habeas corpus": "to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id.* at 609. We then acknowledged that, in the consolidated cases before us, the petitioners had raised precisely such "fundamental legality" claims: that they had been sentenced "for a status … or behavior … not made criminal by the statutes under which they were convicted and sentenced." *Id.*

One of the petitioners in *Davenport*, Nichols, presented a situation sufficiently akin to the one now before us that we set it forth with some particularity. Nichols had been convicted of use of a firearm during a drug offense, in violation of § 924(c). His conviction had occurred prior to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which held "that 'use' in section 924(c) does not include mere possession, as had been the law of this circuit when Nichols was convicted." *Davenport*, 147 F.3d at 607. Given the state of the law at the time of his conviction,

> Nichols had no reasonable opportunity, either
> when he was convicted and appealed or later
> when he filed a motion for postconviction relief

under section 2255, to challenge the legality of his conviction for using a firearm in connection with a drug offense on the ground that "use" does not include merely possessing. The law of the circuit was so firmly against him that we have held that in that period defendants in this circuit did not have to raise a *Bailey* issue in order to preserve it as a basis for collateral attack later on, when the Supreme Court overruled our decisions. It would just clog the judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings.

The question is whether in these circumstances, which as we said differ markedly from those of Davenport's case, the remedy created by section 2255 can be thought adequate to enable the prisoner to test the legality of his detention. Here, in agreement with the Third Circuit's decision in *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997), we think the answer is no. Nichols could not use a first motion under the section to obtain relief on a basis not yet established by law. He could not use a second or other successive motion to obtain that relief because the basis on which he seeks relief is neither newly discovered evidence nor a new rule of constitutional law … .

> A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense.

*Id.* at 610–11 (emphasis in original) (citations omitted).

We therefore concluded that the savings clause will permit a federal prisoner "to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *Id.* at 611. In the wake of *Davenport*, we distilled that holding into a three-part test: a petitioner who seeks to invoke the savings clause of § 2255(e) in order to proceed under § 2241 must establish: (1) that he relies on "not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion," (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is "grave enough … to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding," such as one resulting in "a conviction for a crime of which he was innocent." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012); *see also Davenport*, 147 F.3d at 611 (referencing the procedure as one to correct "a fundamental defect" in the conviction or sentence).

**2.**

We now consider whether Mr. Montana's claim satisfies this three-part test previously established in our case law. We first must ascertain the origin of the right that Mr. Montana asserts. We agree with the parties that, at bottom, this case is one of statutory interpretation. Mr. Montana's claim is based on the Supreme Court's 2014 decision in *Rosemond*, which interpreted the same statutes involved in Mr. Montana's case.

*Davenport*'s second condition has two components: retroactivity and prior unavailability of the challenge. The parties correctly agree that *Rosemond*'s holding is retroactive. *Teague v. Lane*, 489 U.S. 288, 306–10 (1989), and *Bousley v. United States*, 523 U.S. 614, 619–21 (1998), teach that new rules are applied retroactively when they are substantive; procedural rules apply retroactively in much narrower circumstances.[9] *Rosemond*, which addressed the requirements for criminal liability under § 924(c), is a substantive rule, and we therefore

---

[9] *See Narvaez v. United States*, 674 F.3d 621, 625–26 (7th Cir. 2011), *Chaidez v. United States*, 655 F.3d 684, 688 (7th Cir. 2011); *see also Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (holding "decisions that narrow the scope of a criminal statute by interpreting its terms" do not fall within the *Teague* retroactivity bar); *Bousley v. United States*, 523 U.S. 614, 620 (1998) (concluding that "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal" and are not *Teague*-barred (citations omitted) (internal quotation marks omitted)); *O'Dell v. Netherland*, 521 U.S. 151, 157 (1997) (noting that new rules are to be applied retroactively where they "forbid[] criminal punishment of certain primary conduct" (internal quotation marks omitted)).

shall apply it retroactively to cases on collateral review. *Cf.*
*Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) ("A
judicial construction of a statute is an authoritative statement
of what the statute meant before as well as after the decision
of the case giving rise to that construction."). The other com-
ponent of *Davenport*'s second condition is that the new, retro-
active rule "could not have been invoked in [the petitioner's]
first § 2255 motion." *Light v. Caraway*, 761 F.3d 809, 813 (7th
Cir. 2014).[10] Although our earlier case law had employed var-
ious formulations of this inquiry,[11] our recent en banc deci-
sion in *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015)

---

[10] *See also Davenport*, 147 F.3d at 610 ("Nichols had no reasonable oppor-
tunity, either when he was convicted and appealed or later when he filed
a motion for postconviction relief under section 2255, to challenge the le-
gality of his conviction for using a firearm in connection with a drug of-
fense on the ground that 'use' does not include merely possessing. The
law of the circuit was *so firmly against him* that we have held that in that
period defendants in this circuit did not have to raise a *Bailey* issue in order
to preserve it as a basis for collateral attack later on, when the Supreme
Court overruled our decisions. It would just clog the judicial pipes to re-
quire defendants, on pain of forfeiting all right to benefit from future
changes in the law, to include challenges to settled law in their briefs on
appeal and in postconviction filings." (emphasis added) (citations omit-
ted)).

[11] In *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014), we recognized that,
"[w]e have applied two different tests in this context" to determine
whether a claim could have been invoked:

> In *Brown v. Rios*, [696 F.3d 638 (7th Cir. 2012)] we simply
> concluded that the prisoner could not have invoked [the
> new rule] because [the case on which it was based] hadn't
> been decided by the time of the petitioner's first § 2255
> motion. *Brown v. Rios*, 696 F.3d at 640 …. In other cases,

(en banc), articulated that the second prong is satisfied if "[i]t would have been futile" to raise a claim in the petitioner's original "section 2255 motion, as the law was squarely against him." *Id.* at 1136.

When we examine the state of the law of this circuit at the time of his trial, direct appeal, and, indeed, at the time of the initial § 2255 proceeding, we must conclude that there was an opening for the argument Mr. Montana now raises. In *United States v. Woods*, 148 F.3d 843 (7th Cir. 1998), we acknowledged that merely aiding the underlying crime and knowing that a gun would be used or carried cannot support a conviction under § 924(c). *Id.* at 848 (emphasis added). Mr. Montana contends that *Woods* is squarely against his position, because *Woods* allowed for a conviction on constructive knowledge. We cannot accept that reading of *Woods*. We stated there that we need not resolve a legal dispute about the adequacy of

---

> however, we have "employed a slightly higher stand-ard," requiring that the prisoner "show that his claim was '*foreclosed by binding precedent*' at the time of his direct appeal and § 2255 motion." *Brown v. Caraway*, 719 F.3d [583,] … 595 [(7th Cir. 2013)] (quoting *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012)). We reasoned that "the fact that a position is novel does not allow a prisoner to bypass sec-tion 2255 … . Only if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent is a § 2255 remedy inade-quate." *Hill*, 695 F.3d at 648 (quoting *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007)) (internal quotation marks omitted). To satisfy this standard, the prisoner must show that "if [he] had made the argument he currently ad-vances … he clearly would have lost under" the prece-dent of the jurisdiction.
>
> *Id.* (final three alterations in original) (emphasis added).

constructive knowledge because "the government presented evidence that Woods had *actual knowledge* that [his confederate] would *brandish* a gun" during the underlying bank robbery. *Id.* at 846 (emphasis in original).

It was therefore open to Mr. Montana to argue, at the time of his appeal and at the time of his initial collateral attack under § 2255, that the statutory offense of aiding and abetting the carrying of a firearm during a crime of violence required that he have actual knowledge that his confederate was carrying a firearm. Indeed, when we next revisited the elements of the offense in *United States v. Taylor*, 226 F.3d 593 (7th Cir. 2000), we made no mention of constructive knowledge being adequate to sustain such a conviction. The entire tenor of the court's discussion makes it difficult to conclude that such constructive knowledge would have sufficed. Rather, it is far more plausible to read *Taylor* as suggesting that constructive knowledge had no place in such an analysis because knowledge of the presence of a firearm was considered a necessary component of the defendant's intent to foster the firearm's use in the underlying crime. *See id.* at 597 ("If Wilson was physically distant or otherwise removed from Taylor's vantage at the time Wilson brandished and used the firearm, we could not automatically presume Taylor's observation and actual knowledge of weapon use."). In any event, it certainly was not foreclosed to Mr. Montana to argue that the Government had to prove that he had actual knowledge of the presence of the firearm to sustain his conviction. Mr. Montana was therefore entirely free to make his current argument that, by the time he had actual knowledge of the presence of the firearm, he was unable to cease the activity he had undertaken in support of his confederate.

## Conclusion

We conclude that our established case law interpreting the federal habeas statutes precludes Mr. Montana's prevailing in this appeal. More precisely, because he was not precluded from arguing in his direct appeal and in his first collateral attack under § 2255 that he had to have actual knowledge that his confederate had a firearm, he cannot proceed under § 2241. Accordingly, the judgment of the district court must be affirmed.

AFFIRMED